## TAFT v. TIEDE & Co.

1. **Contract:** BREACH OF: MEASURE OF DAMAGES. Where the defendants contracted to purchase for the plaintiff, on his specifications, all the material required for use in operating his factory, but failed to do so, it was held that the estimated net profits of the operation of the factory during the time it was idle in consequence were proper elements of damage to be considered in an action for the breach of the contract.

*Appeal from Clayton District Court.*

FRIDAY, DECEMBER 17.

THE plaintiff and the defendants entered into a written contract, of which the following is a copy:

"This agreement, made and entered into this 26th day of September, 1876, by and between Geo. Taft and A. C. Tiede & Co., both parties of Elkport, witnesseth: This agreement is made for the following purposes: The above Geo. Taft, not having the means to conduct the business of stave-factory and saw-mill successfully, makes the following agreement with the above A. C. Tiede & Co. The said A. C. Tiede & Co. to purchase all raw material under the specifications of above Geo. Taft at the lowest possible price, and to charge the same to the above Geo. Taft at actual cost price. They are further to advance the pay for all hands necessary to the successful prosecution of the above business, and also to advance the necessities of life to the above Geo. Taft and his son H. P. Taft. The above A. C. Tiede & Co. hereby agrees to take all the flour barrel staves, of good merchantable quality, made under this agreement, at seventeeen cents per set including

heading, said staves to be delivered as fast as merchantable. Above Geo. Taft agrees to allow A. C. Tiede & Co. to store the same in his sheds until sold, free of charge. The above Geo. Taft further turns over to said A. C. Tiede & Co. all raw material and manufactured stock of any and all description now on hand, and in his possession, to be manufactured and disposed of to the best possible advantage by said A. C. Tiede & Co., and hereby relinquishes all right to dispose of above material or manufactured goods. All lumber and other manufactured goods to be sold at the highest possible price, and the proceeds to be credited to Geo. Taft's indebtedness to A. C. Tiede & Co. after deducting, first, the amount paid or advanced by said A. C. Tiede & Co. for raw material and hands; and, secondly, five per cent on gross amount received, which A. C. Tiede & Co. are to have for transacting the business, excepting the above mentioned staves, upon which there is to be no percentage, but which are to be credited the above Geo. Taft under the same conditions. The above Geo. Taft hereby agrees to furnish said A. C. Tiede & Co. with a report at the end of each week showing the amount and nature of the work done, and to furnish a correct report of time put in by each hand. The above Geo. Taft and his son H. P. Taft finally agree to devote their time and energy to the prosecution of the above business without further compensation than above mentioned, and the above Geo. Taft agrees to apply any and all balances appearing from the carrying on of this business on his indebtedness to A. C. Tiede & Co. This agreement to be binding for one year from the date of the same. A settlement to be made at the end of each month, showing the amount advanced by said A. C. Tiede & Co. and amount received, and if any balance appear in their favor above Geo. Tatf to give his note for the same, bearing ten per cent interest per annum. In witness whereof, we have hereto set our hands the day and year first above written.

" A. C. TIEDE & Co.
" GEORGE TAFT."

This action was commenced January 4, 1878. The plaintiff averred that he had in all respects performed, or offered to perform, said contract on his part; that defendants refused and neglected to comply with said agreement, on their part, by failing to purchase all the raw material as requested and specified by plaintiff, necessary to carry on successfully the business of said factory and said mill, and that by reason of such failure the same was idle for thirty-two weeks of the year provided for in the contract, and the factory while it was operated was run to great disadvantage. It was averred that the average earnings of said mill and factory, when run with full supply of proper material under the contract, was $140 per week over and above all expenses and costs of labor beyond the labor of the plaintiff and his son H. P. Taft. Judgment was demanded for $4,700.

The defendants answered by a general denial, and also pleaded that, in consequence of repeated violations of the contract on the part of plaintiff, the defendants rescinded the same on the 24th of March, 1877, and proceeded no further. The action was consolidated with another action which the defendants herein had brought against the plaintiff. The cause as consolidated was tried by the court, and judgment was rendered in favor of the plaintiff for $219.12 and costs. This judgment allowed plaintiff $3,000 damages for breach of the contract sued on. Defendants appeal.

*Murdock & Larkin* and *L. O. Hatch*, for appellants.

*J. O. Crosby* and *Thos. Updegraff*, for appellee.

ROTHROCK, J.—The action was at law, and the finding of the court is entitled to the same weight as the verdict of a jury. It will, therefore, be understood that we do not enter upon the consideration of questions of fact where there is a conflict in the evidence, and we may as well say here that the court was justified from the evidence in fixing the amount of the damages at the sum

1. CONTRACT: breach of: measure of damages.

of $3,000, provided the measure of damages which was adopted was not erroneous. There was no finding of facts by the court, and we can only determine the measure of damages from the evidence which was introduced. The only assignment of error is that "The court erred in finding the plaintiff entitled under the evidence to damages in the sum of $3,000 for breaches of the contract sued on." There does not appear to have been any objections nor exceptions to the evidence. The evidence as to the damages consisted of estimates of the earnings of the stave factory, principally, when it was supplied with the material for its operation. It might well be said that if this character of evidence, and this rule of damages, were adopted as correct by the parties upon the trial in the court below, it is too late to make objection thereto in this court. But as counsel argue the case upon the question as to the proper measure of damages, and do not raise the question of practice, we will briefly consider the appeal upon its merits.

This contract recites that the plaintiff did not have the means to conduct the business successfully, and provides that the defendants should furnish all the raw material. This provision of the contract precludes the idea that in case of a failure of the defendants to furnish the material, the plaintiff should furnish it and thus protect himself from loss as far as possible. There is some disagreement by counsel as to which of the parties was bound under the contract to fix the price and character of the materials. We think this readily determined by the contract itself. It provides that "The said A. C. Tiede & Co., to purchase all raw materials under the specifications of above Geo. Taft, at the lowest possible price, and to charge the same to the above Geo. Taft at actual cost price." Under this stipulation Taft was to specify what material he required, and Tiede & Co. were to go into the market and purchase it at the lowest possible price. The price not to be fixed by Taft, but by Tiede & Co. The court may have fairly found from the evidence that the plaintiff was repeatedly calling for material to manufacture barrel staves, and that defendants

failed to furnish them because they did not offer enough for them, and coupled their offers to purchase with a proposition to pay for them partly in store goods. If the factory was kept idle for these reasons, we do not think it was allowing speculative, remote or contingent profits to estimate the damages based upon the net earnings of the factory if it had been employed. The damages thus allowed did not depend upon contingencies as in *Howe Machine Co. & Bryson*, 44 Iowa, 159, and in *Wilson Sewing Machine Co. v. Sloan*, 50 Id., 367. In the case at bar the plaintiff had the right to designate or specify the kind of material, and the evidence shows that he called for such as was suitable for barrel staves. The defendants were bound by the contract to take all that should be manufactured at a fixed price. The evidence tends to show that the material could have been purchased, and the value thereof; with the cost of the material ascertained, and the expense of operating the factory, and the price agreed to be paid for the staves, the damages claimed and allowed were not speculative profits. The fluctuation of the market for staves was not an element to be considered. That was fixed by the contract. In our opinion the judgment of the District Court should be

AFFIRMED.